Fleming, guardian, *vs.* Butts, administrator, *et al.*

[Warner, Chief Justice, being engaged in presiding over the senate, organized as a court of impeachment, did not sit in this case.]

1. Land under levy by execution founded on a general judgment from a state court when the debtor filed his petition in bankruptcy, is not disengaged from the levy or the lien by a sale made by the assignee under an order to sell free from incumbrances, the order granted by the register (not by the judge), and granted without notice to or appearance by the plaintiff in the execution, and without his being named in the petition for the order or in the order itself, and without his lien being, in either, distinctly specified; his judgment never having been proved in bankruptcy, nor its lien submitted to that jurisdiction.

2. The court may require levies upon personalty to be legally accounted for before acquiescing in a verdict in a claim case subjecting land; and the grant of a new trial not otherwise sustainable may be upheld because the levies upon personalty are neither disposed of by entries on the *fi. fa.*, nor satisfactorily explained by the evidence.

Levy and sale. Judgments. Bankrupt. Claim. New trial. Before Judge Wright. Baker Superior Court. May Term, 1879.

Reported in the opinion.

D. A. Vason; W. O. Fleming; A. L. Hawes, for plaintiff in error.

Warren & Hobbs, for defendants.

BLECKLEY, Justice.

The property levied on and claimed was land. The jury found it subject. The court granted a new trial. It is to ascertain whether there was error in thus controlling the verdict that the writ of error was brought.

The *fi. fa.* was in favor of Fleming and against Mills, Hull and Odom. It bore date December 8, 1868, and was issued from Baker superior court upon a judgment rendered by that court on the first day of January, 1868. It was for thirteen hundred and seventy-five dollars, besides costs. It was levied by the sheriff upon five described lots of land, eighteen head of cattle, eighteen head of hogs, five hundred bushels of corn, more or less, and thirteen mules, all as the property of the defendant Mills. This levy was made December 16, 1868, and embraces the land in controversy. Another levy upon the same land appears on the *fi. fa.*, bearing date November 18, 1875, but not stating as whose property the land was seized. Other levies are also entered upon the *fi. fa.* as follows : One, dated November 18, 1875, on four described lots of land and five mules, as the property of the defendant Hull; one, without date, on two mules and ten head of cattle, more or less, with no statement as to whose property they were; and one, dated January 17, 1876, on two described lots of land, as the property of the defendant, Odom. There is no entry on the *fi. fa.* disposing of any of these levies, either as to the realty or the personalty. The claim case with which we are now dealing is confined to the five lots of land levied upon as the property of Mills on the 16th of December, 1868, and again levied upon (as whose property not stated) on the 18th of November, 1875. The claim was interposed on the first of April, 1878, by the executrix of W. B. Parker and the administrator of J. R. Butts, and the trial was had at the May term, 1879, of Baker superior court. The plaintiff proved possession of the land in the defendant, Mills, at the date of the levy, December 16, 1868. The

claimants introduced, from the district court of the United States for the southern district of Georgia, a transcript of proceedings in bankruptcy, and they also introduced a deed from the assignee in bankruptcy covering the premises in dispute. It appeared from these documents that the defendant, Mills, filed his petition in bankruptcy on the 28th of December, 1868, and was adjudicated a bankrupt on the 7th of January, 1869; that an assignee was appointed, to whom the effects of the bankrupt were duly assigned; that on the 31st of July, 1869, the assignee addressed a petition to the judge of the district court, praying him to order a sale of the premises free and clear of all incumbrances, according to law, in which petition the representation as to incumbrances was as follows: " That said property is incumbered by a mortgage made and executed by the said bankrupt to one David J. Bailey, and by several judgment liens from the superior court of Baker county against the said bankrupt, and that it is for the interest of said estate and of the creditors of said bankrupt that said property should be sold free and clear of all incumbrances;" that on the 6th of August, 1869, a register in bankruptcy acted upon the petition and passed an order directing the sale as prayed for, free and clear of all liens and incumbrances, the sale to be made at public auction at the time and place of conducting public sales in Baker or Dougherty county, and after due and legal notice; that the assignee sold the premises, in the manner prescribed, on the 5th of October, 1869, in Baker county, for fifty dollars, Parker, then in life, and the administrators of Butts being the purchasers, to whom the assignee conveyed, on the same day, by deed. This deed was the source and evidence of the claimants' title. There was evidence showing that in December, 1868, corn was worth one dollar per bushel, and mules one hundred and twenty-five dollars each; hogs three or four dollars per head; cattle about seven dollars per head; that the bankrupt's mules were carried away by his assignee in bankruptcy, and the cattle sold by said assignee. It ap-

peared that the plaintiff in *fi. fa.* realized nothing from the personalty levied upon as the bankrupt's property; that he endeavored to secure the same or some of it through the state courts, but made no application to the federal court. How this property passed out of the hands of the sheriff, and into the hands of the assignee in bankruptcy, was not shown, nor was there any accounting whatever for the other levies on personalty. The po session of the land in controversy in the present claim case was not shown to have passed out of the bankrupt, or into the claimants or any other person. The only evidence of possession of the land related to the date of the levy, to-wit: December 16, 1868.

The court charged the jury, among other things, to this effect : That a sale of the land by the assignee, free from incumbrances, under an order passed by the register in bankruptcy, would be valid, and the purchasers would acquire title as against the levy and the lien, if the assignee made them a deed, and if they purchased without actual notice of the prior levy by the sheriff. The grounds of the motion for a new trial were that the verdict was contrary to the charge of the court, to the evidence, the weight of evidence, and the equity of the case.

1. If the verdict finding the property subject had nothing to render its propriety questionable except its conflict with the charge of the court, the grant of a new trial could not be upheld; for the charge was erroneous. The judgment which was rendered in January, 1868, bound all the property of the defendants from its date. Code, §3580. The execution was final process, and was duly levied before the petition in bankruptcy was filed. The adjudication of bankruptcy did not throw off the lien or dissolve the levy. Nor did the subsequent order of the register to sell free from incumbrances do either. That order was granted in the absence of the plaintiff in *fi. fa.*, and without notice to him. He was not heard and not warned. His lien and levy were property, and to extinguish them without giving him an opportunity to be heard in support of them, would

be to take away his property without due process of law. He had not entered the bankrupt court; had not proved his debt; had not asked that tribunal for any aid or any favor. It is not certain that the register intended to interfere with the levy, or that he even knew of it. The levy is not disclosed in the assignee's petition for the order of sale; nor is the plaintiff or his particular judgment named, either in the petition or the order. But it is not material what the register intended; if his purpose was to affect the plaintiff by such an order, he could not and did not accomplish it. All the world are not bound to encamp round about a register in bankruptcy for the purpose of observing his acts, and taking notice of what he may be pleased to do on the *ex parte* petition of an assignee. Grant that in contemplation of law the district judge, as the real judicial head of bankruptcy, is thus attended, (and I think no such theory is to be countenanced,) there is no occasion to extend the fiction to a register, whose station is not at the centre of the system but in more remote and obscure regions. It is not absolutely certain that the jurisdiction to grant an order to sell free from incumbrances, can be exercised through a register. Perhaps it can be, when there is due notice, and the application is entirely uncontested.

2. We abstain from reversing the judgment granting a new trial, solely because there is some question as to accounting for the levies on personalty. One of these levies is without date, and another is of the same date as this upon land. Possibly there should be a more thorough sifting as to all. It is not even explained how the assignee got rid of the sheriff; and not a word of explanation is offered as to any but the one levy.

Cited for reversal, 40 *Ga.*, 257; 43 *Ib.*, 383; 46 *Ib.*, 412; 52 *Ib.*, 605; 53 *Ib.*, 208; 55 *Ib.*, 11, 579; 58 *Ib.*, 119, 604; bankrupt act of 1867, §§14, 20. For affirmance, U. S. Rev. Stat., §§4998, 4999, 5001; Bump on Bank., 8th ed., 164, 165, 601.

Judgment affirmed.